UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| JUAN SANCHEZ, on Behalf of Himself and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> S&P DATA NEW MEXICO, LLC, and S&P DATA, LLC, <br><br> Defendants. | § § § § § § § § § § § § § § § Case No. 1:20-cv-00979-KWR-GJF |

**JOINT MOTION FOR APPROVAL OF FAIR LABOR STANDARDS ACT
COLLECTIVE ACTION SETTLEMENT**

Plaintiff Juan Sanchez, individually and on behalf of all others similarly situated ("Plaintiff") and Defendants S&P Data New Mexico, LLC and S&P Data, LLC ("Defendants") (together, the "Parties") respectfully and jointly move the Court for approval of a Fair Labor Standards Act ("FLSA") settlement. In support thereof, the Parties respectfully show as follows:

## I. INTRODUCTION

Representative Plaintiff Juan Sanchez and Defendants S&P Data New Mexico, LLC and S&P Data, LLC respectfully move for approval of the proposed FLSA settlement reached by the Parties and memorialized in the Settlement Agreement and Release ("Settlement" or "Agreement") attached as Exhibit A.[1]

The proposed settlement will resolve bona fide disputes involving overtime compensation claims under the FLSA, 29 U.S.C. §§ 201-219, as well as state wage-and-hour statutes. If approved, the Settlement will provide guaranteed compensation for the group of 406 individuals

---

[1] The Parties respectfully request the Court seal Exhibit A, and have jointly moved to seal that document by separate motion filed concurrently herewith.

who have already submitted their written consents to join this collective action pursuant to 29 U.S.C. § 216(b). Those that have opted-in to the case are the only individuals who would be bound by the settlement—as such, because this is an *opt-in* collective action where each member of the collective has agreed to be bound by a settlement, as opposed to a Rule 23 *opt-out* settlement that would bind absent class members, no fairness hearing is required or requested by the Parties.[2]

The Parties respectfully submit that the proposed Settlement is fair and reasonable, and satisfies the criteria for approval under the FLSA § 216(b). The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel and with the assistance of an experienced mediator, Dennis Clifford. If approved, the Settlement will make settlement payments to each of the collective members that have already voluntarily elected to participate in this case. Those individuals that have joined will be releasing their FLSA claims, as well as related state law claims based on the same conduct underlying the alleged FLSA violations.

The settlement documents submitted for approval consist of the Settlement Agreement and Release (Exhibit A, submitted for approval under seal) and the Proposed Order Approving Settlement (Exhibit B). The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed administration and distribution of the settlement proceeds.

## II. FACTUAL AND PROCEDURAL BACKGROUND

**A.     The Action.**

---

[2] *See Moore v. Ackerman Inv. Co.*, No. C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *McLean v. HSM Elec. Prot. Services, Inc.*, No. 607-CV-1680-ORL-28DAB, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same); *Barnes v. Benzerenterprises, Inc.*, No. 607-CV-1754-ORL-28DAB, 2008 WL 4059839 (M.D. Fla. Aug. 28, 2008) ("the Court determines that there is no need for a fairness hearing").

On September 24, 2020, Plaintiff filed this lawsuit against Defendants S&P Data New Mexico, LLC and S&P Data, LLC based on alleged off-the-clock work performed by Plaintiff and other similarly situated employees. *See* Dkt. 1. The central allegations was that Plaintiff and other non-exempt, hourly-paid employees who worked at Defendants' call center in New Mexico were not being compensated for time spent loading necessary work programs on their computers prior to clocking in for work, and for work performed throughout the day after clocking in that was not "active" work. Plaintiff also alleged that these workers were paid non-discretionary bonuses that were not incorporated into their overtime rates of pay. Plaintiff sought unpaid overtime wages for these workers pursuant to the FLSA and related New Mexico state wage-and-hour laws.

Defendants denied the allegations as set forth in the Complaint. *See* Dkt. 15. Instead, Defendants contend that the time spent completing security screening is not compensable under state or federal law.

The Parties stipulated to distribute court-authorized notice to the putative collective members pursuant to 29 U.S.C. § 216(b). *See* Dkt. 28. The Court granted the stipulation (*see* Dkt. 29), and following issuance of notice a total of 405 individuals submitted their written consent to join the collective action. In total, the collective action is comprised of 406 individuals.

**B.      Negotiation of the Settlement.**

During the discovery period, the Parties exchanged significant information related to the claims of Plaintiff and the collective members, as well as the defenses raised by Defendants. Defendants provided Plaintiff's Counsel with data of the compensation and weeks of work for the Plaintiffs. Using these records, Plaintiff calculated the potential amounts owed in unpaid wages for Plaintiff and the 405 opt-in members.

The Parties thereafter engaged in good faith, arms-length settlement negotiations for several months following that exchange of information. In July 2022, the Parties attended private mediation with Dennis Clifford, a mediator with extensive experience in wage and hour litigation. During mediation, the Parties discussed potential damages, the applicable limitations period, the possibility of decertification of the collective action, and the merits of the case. With the assistance of Mr. Clifford, the Parties were able to reach agreement to settle the dispute. Following finalization of a formal written settlement agreement (which is attached as Exhibit A), the Parties now request the Court approve this settlement.

**C.    The Settlement Terms.**

If approved, the Settlement will cover Representative Plaintiff Juan Sanchez and the 405 collective members who have already submitted their written consents to participate in this collective action. Including Named Plaintiff Sanchez, the entire scope of the Settlement covers 406 individuals.

The total settlement amount is $325,000.00, which will cover: (a) all of the individual payments to the Collective Members; (b) Representative Plaintiff's service award; and (c) Class Counsel's attorneys' fees and expenses (including anticipated expenses for settlement administration).

$165,261.93 of the total settlement amount will be divided into individual payments to Plaintiff and Collective Members. The individual payments are calculated proportionally on each Collective Members' alleged overtime damages. The individual payments have been calculated by Class counsel and approved by Defense Counsel, and can be found at Appendix 1 to the Parties' Settlement Agreement. For any Collective Members' whose individual payment award would have been $20.00 or less, their distribution will be set at a floor of at least $20.00.

$5,000.00 of the total settlement amount will be paid to Representative Plaintiff Juan Sanchez, in addition to his individual payment, for his services as the Representative Plaintiff. In addition, Class Counsel is requesting approval for $130,000.00 for attorneys' fees, $18,998.07 in out-of-pocket litigation expenses, and $5,740.00 in costs for the third-party settlement administrator.

In exchange, the Action will be dismissed, and the Collective Members will release Defendants from federal and state wage-and-hour claims, rights, demands, liabilities and causes of action asserted in Plaintiff's Complaint, including but not limited to claims for unpaid wages from the two years prior to each individual's filing of their consent, unpaid overtime compensation from the two years prior to each individual's filing of their consent, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the FLSA and corresponding New Mexico state wage and hour laws. That release will only affect the 406 participating collective members, and will not extend to any putative class members that did not join the collective action. None of the Collective Members are releasing their claims for the third-year of their employment and are retaining their right to re-assert those third-year claims if they so choose.

### III.   THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to judicial approval pursuant to the FLSA § 216(b). As shown here, approval is warranted.

#### A.   Standard for Approval.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868, at *1 n. 1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir 1982) (the court should determine

whether the settlement is "a fair and reasonable resolution of a bona fide dispute" (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n. 8 (1946)).

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). In multi-plaintiff cases, such as class actions and the like, there is an overriding public interest in favor of settlement, because settlement of complex disputes minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980) (citation omitted). "In execising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate." *Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

In the Tenth Circuit, the following factors are analyzed in determining whether this standard is met: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). As discussed below, the Settlement meets the standards for approval. As a result, Plaintiff and Defendants believe the Settlement should be approved so the settlement funds may be distributed to the Collective Members.

**B.     The Proposed Settlement is "Within the Range of Possible Approval."**

The Settlement is beneficial to the Collective Members in light of the complexities of the case. First, the Parties vigorously disputed whether the time spent by Plaintiff and Collective Members prior to clocking-in and throughout their day was compensable time under Federal law

and New Mexico law. Second, even if the time spent working by Plaintiff and Collective Members while off-the-clock was compensable, Plaintiff carried a heavy burden to prove that it was not *de minimis*. Plaintiff argued that he was required to arrive early each day and to spend time loading various computer programs before he and others like him could clock in for work. There are extensive factual disputes concerning the length of time that it took for Plaintiff and Collective Members to load these programs before clocking in for work. Further, Defendants vigorously dispute Plaintiff's damage model and asserts that class certification and final collective action certification are not warranted. Given the disputed factual and legal issues in the case, the settlement represents a reasonable resolution of this action and eliminates the risk that Collective Members might otherwise recover nothing.

   1. **The proposed settlement was fairly and honestly negotiated.**

In this case, the Parties jointly seek to settle this matter and "[t]here are numerous indicia that the settlement negotiations in this case have been fair, honest and at arm's length." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). "First, the parties to this litigation have 'vigorously advocated their respective positions throughout the pendency of the case.'" *Id.* Here, the Parties were represented by "counsel with expertise on the [wage and hour laws] and complex class action litigation." Counsel for both Parties are experienced litigators who practice wage and hour cases on a daily basis and who have been involved in millions of dollars' worth of settlements of such actions during their careers. Moreover, the Parties utilized a well-known and experienced third party mediator, Dennis Clifford, who is familiar with negotiating wage and hour cases, to assist them in reaching the Settlement. These factors support the integrity of the Parties' settlement negotiations.

   2. **Serious questions of law and fact exist.**

In evaluating a settlement, "[t]here is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation." Newberg on Class Actions § 11.45 (4th ed. 2002). Although it is not the role of the Court at this stage of the litigation to evaluate the merits, it is clear that the Parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated. *Lucas*, 234 F.R.D. at 693-94. First, the Parties disputed whether this case could be maintained as a collective action or as a class action. Thus, without the settlement, the Collective Members may have been subject to decertification and may not have succeeded in their claims. Second, there has been a bona fide disagreement about whether the time spent by Plaintiff and Collective Members loading computer programs before clocking in was compensable, and if so, whether that time was *de minimis*. While Plaintiff is confident in the strength of the merits of his claims, if the Parties spent significant time completing discovery and conducting depositions, there may have been a possibility that Defendants could have prevailed on summary judgment with respect to some or all of Plaintiff's claims. "It is thus clear that there were numerous factual and legal questions yet to be addressed in this litigation that could have had a serious impact on the results for either side." *Lucas*, 234 F.R.D. at 694. This factor also supports granting the Motion for Settlement Approval.

3.    **The value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.**

"If this case were to be litigated, in all probability it would be many years before it was resolved." *Lucas*, 234 F.R.D. at 694. Many years and significant costs would be required for the Parties to litigate the claims, to complete discovery (including expert discovery), participate in

pretrial proceedings, and file summary judgment motions. In turn, summary judgment decisions, class certification decisions, and a ruling on whether to decertify the collective action could be appealed to the Tenth Circuit (and possibly beyond), which could take many years to complete. Assuming the Parties went to trial and verdict, there is a possibility that the verdict could be appealed as well and delay final resolution of this Action for years. In short, the ultimate resolution of this action on the merits (and in turn, compensation to the Collective Members) via trial and appeal is indefinite at best.

"By contrast, the proposed settlement agreement provides the class with substantial, guaranteed relief." *Lucas*, 234 F.R.D. at 694; *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 U.S. Dist. LEXIS 86741, at *37 (W.D. Okla. Oct. 27, 2008) (finding that the class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted."). An evaluation of the benefits of the Settlement must also be tempered by the recognition that any compromise involves concessions on both sides. Indeed, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Thus, this factor also weighs in favor of granting approval.

**4.      The judgment of the parties that the settlement is fair and reasonable.**

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695; *McNeely*, 2008 U.S. Dist. LEXIS 86741, at *37-38 (same). "Here, the Parties' counsel—among whom are attorneys with substantial experience in complex class action litigation and [employment] class actions—unanimously support this settlement." *Lucas*, 234 F.R.D. at 695. The same is true here, and therefore this factor supports granting approval.

**C.      The Settlement is Fair and Reasonable in Light of the Uncertainty of the Outcome.**

The proposed Settlement Agreement is fair to Plaintiff and Collective Members because it provides for a recovery based upon data provided by Defendants for the number of workweeks and the amount of compensation paid to the Collective Members, with each Collective Members allocated a separate amount based upon their respective weeks of work within the applicable limitation period (and providing for a minimum settlement payment of $20 for those Collective Members' whose apportioned settlement share would have fallen below $20 based on their workweeks). The settlement allows each Collective Member to receive an amount from the settlement fund that is based upon each individual's proportionate share of the total damages in the aggregate, exclusive of attorneys' fees and costs. As part of the settlement, the Parties also agreed to an "incentive award" for Plaintiff Sanchez based on his participation in assisting Counsel in obtaining this Settlement for such a large group.

Plaintiffs' Counsel calculated the alleged overtime compensation owed to Plaintiff and Collective Members by using an average of 20 minutes of alleged off-the-clock work per shift, an average of five shifts per week, an average of eight hours per shift, and under the presumption that half of the weeks worked by each Collective Member accrued at least 40 total on-the-clock hours. This amount of time was derived from information provided by various Collective Members about how much time, on average, that it took to load each program on their computer before they could clock in and the amount of time, on average, for which they were not compensated after clocking in for their shifts due to such time allegedly being deemed "non-active" work time by Defendants. Defendants helpfully calculated the damages related to incorporating the non-discretionary bonuses into the Collective Members' overtime rates of pay at $19,064.43 and provided data supporting that calculation.

Using those averages and estimates, as well as the "bonus rate" damages calculation provided by Defendants, Plaintiff calculated the unpaid overtime wages at approximately $425,000. Defendants disputed that calculation, and alleged that the average amount of time Collective Members spent doing alleged off-the-clock work was far less, that the time spent in such alleged off-the-clock work was not compensable under the FLSA or state law, and that the action would be decertified because Plaintiff would not be able to establish that he and the Collective Members engaged in compensable hours worked while off the clock (or the amount of any such alleged work) using common or representative evidence. The settlement of $325,000 provides fair and reasonable compensation when considering the risks to both sides. Additionally, any Collective Members that is owed less than $20 will receive a minimum payment of $20 and no Collective Member will be releasing claims that accrued during their third year of the limitations period. Accordingly, the settlement proceeds are fair, reasonable and adequate.

**D.     The Attorneys' Fees are Proper and Reasonable.[3]**

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b); *see also Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014); *Robles v. Brake Masters Sys.*, No. CIV 10-0135 JB/WPL, 2011 WL 9717448, at *19 (D.N.M. Jan. 31, 2011) (recognizing in other cases that "[f]ees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *Tabb v. Mentor Prot. Serv. LLC*, No. CIV-17-1139-D, 2018 WL 5269828, at *1 (W.D. Okla. Oct. 23, 2018). "The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Albu*

---

[3]     Defendants do not join in the facts and arguments asserted with regard to attorneys' fees and costs but does not oppose Plaintiff's request for attorneys' fees and costs.

*v. Delta Mech. Inc.*, No. 13-CV-03087-PAB-KMT, 2015 WL 4483992, at *5 (D. Colo. June 30, 2015), *report and recommendation adopted*, 2015 WL 4467434 (D. Colo. July 22, 2015) (citing *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1984). "Since such claims frequently are for small amounts of money, '[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here 'encourages the vindication of congressionally identified policies and rights.'" *Id.*

Although the award of attorneys' fees is mandatory, the Court has discretion to determine the reasonableness of the amount requested. *See Olivo v. Crawford Chevrolet Inc.*, 526 Fed. Appx. 852, 855 (10th Cir. 2013). The attorneys' fees requested here are reasonable in light of the exceptional benefit achieved for Plaintiff and the Opt-in Plaintiffs. In the instant matter, Counsel undertook representation on a contingent fee basis. The Court should find that the percentage of the Gross Settlement Amount allocated to attorneys' fees is within the customary fee range approved by courts in this circuit and that the amount requested is fair and reasonable under the circumstances. *See, e.g., Price v. Devon Energy Corp.*, No. 2:20-cv-00316-KWR-GJF, Order Granting Motion to Approve Settlement at p. 2 (D.N.M. May 24, 2020) (Riggs, D.J.) (approving contingency fee of 40% in collective action settlement) (attached for ease of reference as Exhibit B); *Licon v. BOS Sols., Inc.*, No. 19-cv-1130 JB-KK, Dkt. No. 17 (Joint Motion to Approve FLSA Settlement) (D.N.M. Feb. 26, 2020) and Order Granting Joint Motion (D.N.M. Feb. 26, 2020) (Browning, D.J.) (approving 40%) (attached for ease of reference as Exhibit C); *Gowens v. Bull Rogers, Inc.*, No. 2:16-cv-919-WJ/GBW, Joint Motion for Approval of Collective Action Settlement (D.N.M. Feb. 1, 2019) and Order Approving (D.N.M. Feb. 12, 2019) (approving 40%) (attached for ease of reference as Exhibit D); *Landry v. Swire Oilfield Servs., L.L.C.*, No. 1:16-cv-621-JB-LF, Dkt. No. 102 (Joint Motion for Approval of Collective Action Settlement) (D.N.M.

Aug. 27, 2018) and Dkt. 104 (Order Approving) (D.N.M. Sept. 14, 2018) (approving 40%) (attached for ease of reference as Exhibit E); *see also Ostrander v. Customer Eng'g Servs., LLC*, 2019 WL 764570, at *6 (D. Colo. Feb. 21, 2019) ("fees have ranged from 4 per cent to 58 per cent" of settlement fund); *David v. Crilly*, 292 F. Supp. 3d 1167, 1174 (D. Colo. 2018) (award equal to 37% of gross settlement amount "well within the normal range for a contingent fee award"); *McKinley v. Mid-Continent Well Logging Serv., Inc.*, No. CIV-14-649-M, Dkt. No. 48 (W.D. Okla. Mar. 2, 2016) (approving fee award of 40% of gross settlement fund).

While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically derived from a percentage of the settlement fund recovered. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995). "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective that the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel is retained on a contingent fee basis, as in this case." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 484 (10th Cir. 1998); *see Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849, 853 (10th Cir. 1993); *Lucken Family Ltd. P'ship, LLP v. Ultra Resources, Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *2 (D. Colo. Dec. 22, 2010). In common fund cases, utilizing the percentage method to calculate attorney fee awards is the standard. *See Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have been accumulated. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio

Mar. 8, 2010). The percentage requested here is consistent with these awards, and should be approved as reasonable.

Had this case not settled, Class Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendants could have potentially succeeded. Therefore, Plaintiff and Collective Members were at great risk of non-payment. This risk of non-payment strongly supports the amount requested here. Class Counsel has worked diligently in representing Plaintiff and Collective Members. The attorneys' fees requested by Class Counsel here should not be altered because counsel efficiently resolved this case at a preliminary stage rather than prolonging the litigation and increasing the potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121. The Court should approve Plaintiff's request for attorneys' fees.

E.  **The Settlement Administration Process Will be Fair, Reasonable, and Neutral.**

The Parties have agreed upon the proposed settlement distribution, and have further agreed to utilize a neutral third party settlement administrator who specializes in wage and hour class actions. The third party administrator will be responsible for disseminating the settlement payments, making diligent efforts to ensure those settlement payments reach the Collective Members through skip trace and other public records search to find the most up-to-date mailing addresses, and fielding questions from Collective Members about the settlement.

F.  **The Settlement Should be Approved.**

The terms of the Settlement have been approved by the Parties and their respective counsel. The Settlement was negotiated at arm's length and with the assistance of a skilled and experienced

mediator. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle the appropriate scope of claims at issue in this lawsuit.

Again, the Settlement Agreement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

After the Parties reached an agreement on the Settlement, the Parties engaged in extensive negotiations concerning the specific terms of the Settlement and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard-fought negotiations. Ultimately, there can be no doubt that this Settlement Agreement represents fair value for the Collective Members.

## IV. CONCLUSION

For the reasons set forth herein, the Parties jointly move for an order approving the settlement as fair and reasonable. For the Court's convenience and consideration, a proposed order is attached hereto.

Respectfully submitted on October 14, 2022 by the undersigned counsel of record:

| HODGES & FOTY, LLP | TUCKER ELLIS, LLP |
|---|---|
| /s/ William M. Hogg<br>Don J. Foty<br>dfoty@hftrialfirm.com<br>William M. Hogg<br>whogg@hftrialfirm.com<br>4409 Montrose Blvd., Suite 200<br>Houston, TX 77006<br>Tel: (713) 523-0001; Fax: (713) 523-1116<br><br>*Attorneys for Plaintiff and Collective Members* | /s/ Thomas R. Simmons (with permission)<br>Thomas R. Simmons (OH Bar #0062422)<br>Christine M. Snyder (OH Bar #0086788)<br>950 Main Avenue, Suite 1100<br>Cleveland, Ohio 441133-7213<br>Tel: (216) 592-5000; Fax: (216) 592-5009<br>thomas.simmons@tuckerellis.com<br>christine.snyder@tuckerellis.com<br><br>-and-<br><br>CONKLIN, WOODCOCK & ZIEGLER, P.C.<br>John K. Ziegler<br>Jacqueline M. Woodcock<br>320 Gold SW, Suite 800<br>Albuquerque, New Mexico 87102<br>Tel: (505) 224-9160; Fax: (505) 224-9161<br>jkz@conklinfirm.com<br>jmw@conklinfirm.com<br><br>*Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2022, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ William M. Hogg
William M. Hogg